## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JACQUELYN ECHOLS,

    **Plaintiff,**

**v.**

**GEORGIA PIEDMONT
TECHNICAL COLLEGE; THE
TECHNICAL COLLEGE SYSTEM
OF GEORGIA; GREG DOZIER,**
*in his official capacity*; **and
TAVEREZ HOLSTON,**
*in his official capacity*,

    **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:20-cv-02794-TWT-AJB**

## UNITED STATES MAGISTRATE JUDGE'S
## NON-FINAL REPORT AND RECOMMENDATION

Presently before the Court is a motion to partially dismiss the complaint, filed by defendants Georgia Piedmont Technical College ("GPTC"), The Technical College System of Georgia ("TCSG"), Greg Dozier, and Tavarez Holston (collectively, "Defendants"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 4]. For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART and**

**DENIED IN PART**; that the question of whether the state of Georgia has waived sovereign immunity to claims asserted under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq., be **CERTIFIED** to the Supreme Court of Georgia; and that Plaintiff be **GRANTED LEAVE** to amend the complaint to assert her due-process and equal-protection claims under the Fourteenth Amendment to the United States Constitution via 42 U.S.C. § 1983.

## I.   LEGAL STANDARDS

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure may assert either a factual attack or a facial attack to subject-matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (internal punctuation marks omitted). In contrast, in a facial attack, the court examines whether the complaint has sufficiently alleged subject matter jurisdiction. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*,

2

566 U.S. 449, 452-53 & n.2 (2012).  When considering a facial challenge made in a Rule 12(b)(1) motion, the court construes the complaint in the light most favorable to the plaintiff and accepts as true all well-pleaded facts alleged in the complaint.  *McElmurray*, 501 F.3d at 1251 (noting that in a Rule 12(b)(1) facial challenge, a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised").

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 8 of the Federal Rules of Civil Procedure, a complaint states a claim when it contains, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276,

3

1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted).   A complaint also may be dismissed pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.   *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist*., 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.   <u>BACKGROUND</u>

Plaintiff Jacquelyn Echols, Ph. D., is an African-American woman over the age of sixty who has worked as a college educator for many years. [Doc. 1-1 ¶¶ 6, 7, 17].  In January 2013, Plaintiff was hired to administer GPTC's adult-education program.  [*Id*. ¶ 6].  GPTC is an educational institution that is part of TCSG.  [*Id*. ¶¶ 2, 3].  Presently, Mr. Dozier is the commissioner of TCSG, and Mr. Holston is the president of GPTC.  [*Id*. ¶¶ 4, 5].  GPTC's adult-education program is funded primarily through federal grants.  [*Id*. ¶ 8].

On May 30, 2018, Plaintiff received a letter from the interim president of GPTC stating that her position had been eliminated due to a reduction in force and that her employment would be terminated effective July 1, 2018.  [*Id*. ¶¶ 13, 14]. Ten days later, Plaintiff filed a complaint with the commissioner of TCSG, arguing that the budget shortfall did not affect the adult-education program because it was separately funded and that her termination was in fact a result of unlawful

4

discrimination based on her age and race. [*Id*. ¶ 20]. The internal complaint was subsequently denied. [*Id*.].

In June 2018, Plaintiff learned that GPTC was seeking to fill her old position. [*Id*. ¶ 21]. Plaintiff applied for the position, but it was instead awarded to a white woman who was under the age of forty, had no experience in adult education, and had not held an administrative position overseeing an adult-education program. [*Id*. ¶¶ 17, 22].

In August 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). [*Id*. ¶ 23]. She amended her EEOC charge in October 2018, when she learned that the person selected for her former position was white, and not African-American, as she had been told. [*Id*.]. On January 24, 2020, Plaintiff received a notice of right to sue from the EEOC. [*Id*. ¶ 24].

After receiving the notice of right to sue, Plaintiff filed suit in the Superior Court of DeKalb County, Georgia, on March 20, 2020, asserting claims against GPTC, TCSG, Mr. Dozier, in his official capacity, and Mr. Holston, in his official capacity. [Doc. 1-1]. In Count I, Plaintiff asserts claims for age-based discrimination in violation of the ADEA and in violation of the Age Discrimination Act of 1975 ("Age Discrimination Act"), as amended, 42 U.S.C. § 6101, et seq.

[*Id*. at 6-7].   In Count II, she asserts claims for race-based discrimination in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. § 1981, asserted via 42 U.S.C. § 1983. [*Id*. at 8-9].   In Count III, she asserts claims for violations of the due-process clause of the Constitution of the State of Georgia, Ga. Const. art. I., § 1, ¶ I, [*id*. at 9-10], and in Count IV, she asserts claims for violations of the equal-protection clause of the Constitution of the State of Georgia, Ga. Const. art. I., § 1, ¶ II, [*id*. at 11-12]. Defendants removed the matter to this Court on July 2, 2020.  [Doc. 1].

On July 9, 2020, Defendants filed the motion to partially dismiss that is presently before the Court.  [Doc. 4].  Plaintiff filed a response brief in opposition to the motion, [Doc. 10], and Defendants filed a reply brief in support of the motion, [Doc. 14].   The Court held oral argument on the motion on January 11, 2021. [Doc. 32].  With briefing now complete, the undersigned submits this Report and Recommendation ("R&R") for the District Judge's consideration.

## III.   **DISCUSSION**

Defendants argue that except for the Title VII claims asserted against TCSG, all of Plaintiff's claims are subject to dismissal.  [Doc. 4 at 3].  Specifically, they argue that GPTC should be dismissed from the action because it is not a legal entity

6

subject to suit; that the ADEA claims are barred by sovereign immunity; that the Age Discrimination Act and Title VI claims should be dismissed because the respective Acts do not provide causes of action for employment-related claims; that the § 1981 claims asserted via § 1983 are barred by Eleventh Amendment immunity; that the due-process and equal-protection claims are barred by sovereign immunity; and that the Title VII claims asserted against Mr. Dozier and Mr. Holston should be dismissed as redundant with the claims asserted against Plaintiff's employer. [*Id*. at 3-4 & 14 n.3]. The Court addresses the arguments below, in logical order.

### A.   Abandoned Claims

In her response brief, Plaintiff did not argue against Defendants' contentions regarding GPTC's amenability to suit, the claims asserted under the Age Discrimination Act, the Title VI claims, the Title VII claims brought against Mr. Dozier and Mr. Holston, or the claims for monetary recovery asserted under § 1983. [*See generally* Doc. 10]. She also expressly abandoned the due-process and equal protection claims she asserted under the Georgia constitution. [*Id*. at 4]. At oral argument, Plaintiff also expressly abandoned the claims against GPTC, (Tr. at 17:00-18:03); the claims asserted under the Age Discrimination Act, (*id*. at 18:05-18:26); the claims asserted under Title VI, (*id*. at 18:32-19:02); the

7

Title VII claims asserted against Mr. Dozier and Mr. Holston, (*id*. at 19:04-19:34); and the claims asserted under the constitution of the state of Georgia, (*id*. at 21:12-21:27).[1]

Because Plaintiff expressly abandoned the claims, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss the claims asserted against GPTC, the claims asserted under the Age Discrimination Act, the claims asserted under Title VI, the Title VII claims asserted against Mr. Dozier and Mr. Holston, and the claims asserted under the constitution of the state of Georgia, and that he **DROP** GPTC as a party to this lawsuit.

### B.   Waiver of Eleventh Amendment Immunity

As noted above, Defendants argue that as state entities, they are entitled to dismissal of Plaintiff's ADEA claims and the § 1981 claims asserted via § 1983 on sovereign immunity grounds.  [Doc. 4 at 6-9, 13-14].  They also argue that granting Plaintiff leave to assert due process and equal protection claims under § 1983 would be futile and should be denied because Defendants are immune under the Eleventh Amendment.  [Doc. 14 at 10-11].  Plaintiff does not dispute that that Defendants

---

[1]     Plaintiff did contend at oral argument that monetary recovery is available under § 1983. (Tr. at 19:36-21:10).  The Court will consider the § 1983 claims below.  *See infra* Parts III.B, III.D, and III.E.

are considered state entities.[2]  [*See generally* Doc. 10].  She does, however, contend that Defendants waived Eleventh Amendment immunity when they removed her complaint to federal court.  [*Id*. at 6-7 & nn. 1-2].

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Amendment also generally bars suits brought against a state by its own citizens in federal court.  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 649 (11th Cir. 2020).  "An assertion of Eleventh Amendment immunity essentially

---

[2]      The Court agrees.  "TCSG, including [the unit institution], is an instrumentality of the state of Georgia pursuant to O.C.G.A. §§ 20-4-14 and 20-4-18."    *Lindsay v. Tech. Coll. Sys. of Ga*., Civ. Action No. 1:90-cv-2133-JEC, 2013 WL 591981, at *3 (N.D. Ga. Feb. 14, 2013) (Evans, J.); *accord Wells v. Columbus Tech. Coll.*, 510 Fed. Appx. 893, 896 (11th Cir. Feb. 27, 2013).  It is also well-settled that a suit naming an official in his or her official capacity is no different from a suit against the employer itself. *Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007) (Pannell, J.) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005)); *accord Lathrop v. Deal*, 301 Ga. 408, 425, 801 S.E.2d 867, 880 (2017).

challenges a court's subject matter jurisdiction: 'The Eleventh Amendment restricts the judicial power under Article III.' " *Collier v. Clayton Cnty. Cmty. Serv. Bd*., 236 F. Supp. 2d 1345, 1363 (N.D. Ga. 2002) (Carnes, J.) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996)).  Thus, it is generally recognized as a bar to suit against a state in federal court unless abrogated by a valid act of Congress or unless the state has consented to be sued.  *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016).  However, where, as here, a state removes a case from state court to federal court, it waives Eleventh Amendment forum immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002); *Stroud v. McIntosh*, 722 F.3d 1294, 1299-1302 (11th Cir. 2013)).

Be that as it may, state sovereign immunity is not limited to that derived from the Eleventh Amendment; instead, it is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments."  *Alden v. Maine*, 527 U.S. 706, 712-13 (1999).  Thus, Defendants here are limited to the same immunity they would have enjoyed if the case had remained in state court.  *Stroud*, 722 F.3d at 1302-03 ("[A] state can waive its forum immunity but retain other aspects of sovereign immunity,

including liability from certain claims.")[3]; *Crawford v. Ga. Dep't of Transp.*, No. 1:16-cv-3810-WSD, 2017 WL 1405326, at *4 (N.D. Ga. Apr. 20, 2017) (explaining that "[w]hether the state retains its . . . immunity from *liability* as to a particular claim" is an issue that is separate from Eleventh Amendment forum immunity).

For these reasons, the undersigned finds no basis for granting Defendants' motion on grounds of Eleventh Amendment forum immunity and considers whether Defendants retain sovereign immunity from liability from Plaintiff's claims notwithstanding the removal to federal court.

## C.   ADEA Claims

Defendants argue that Plaintiff's ADEA claims should be dismissed because Defendants are all considered state entities and are therefore entitled to sovereign immunity.  [Doc. 4 at 6-9].  Plaintiff, in response, contends that TCGS implicitly

---

[3]       The Court recognizes Plaintiff's argument that *Stroud* was wrongly decided.  [*See* Doc. 10 at 6 at n.1].  Because this Court is bound to follow Eleventh Circuit precedent, this argument is obviously a non-starter.  *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting within its jurisdiction.");  *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1508 (11th Cir. 1987) ("Absent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts.").  The undersigned therefore gives the contention no further consideration.

consented to suit by individual employees when it accepted federal grant money to fund the adult education program; that the state of Georgia statutorily waived its sovereign immunity to suit under the ADEA; and that Plaintiff's claim for reinstatement is viable under the *Ex parte Young* doctrine.   [Doc. 10 at 4-10 (referring to *Ex parte Young*, 209 U.S. 123 (1908))].

After careful consideration, the undersigned concludes that the question of whether ADEA claims asserted against entities of the state of Georgia are barred by sovereign immunity should be certified to the Georgia Supreme Court.   As Defendants point out, the Georgia Constitution extends sovereign immunity to the state, its departments and agencies, and its officers and employees in their official capacities, except as specifically provided in Article 1, Section 2, Paragraph IX. *Lathrop*, 301 Ga. at 425-26, 444, 801 S.E.2d at 880, 892; *Olvera v. Univ. Sys. of Ga.'s Bd. of Regents*, 298 Ga. 425, 426-27, 782 S.E.2d 436, 437-38 (2016); *Ga. Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 598-99, 755 S.E.2d 184, 189 (2014).   Paragraph IX provides, in relevant part, the extent to which sovereign immunity applies to state entities:

> Except as specifically provided in this Paragraph, sovereign immunity
> extends to the state and all of its departments and agencies.   The
> sovereign immunity of the state and its departments and agencies can
> only be waived by an Act of the General Assembly which specifically

provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. art. 1, § 2, ¶ IX(e).  Thus, state sovereign immunity may be waived by a provision of the Georgia Constitution or an act of the general assembly that specifically waives sovereign immunity.  *Woodard v. Laurens Cnty.*, 265 Ga. 404, 405, 456 S.E.2d 581, 582 (1995).  "Congress can [also] abrogate state sovereign immunity pursuant to its Fourteenth Amendment enforcement powers to redress discriminatory state action."  *Ala. State Conf. of the NAACP*, 949 F.3d at 649; *accord Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001); *see also Ga. Ports Auth. v. Lawyer*, 304 Ga. 667, 674 n.6, 821 S.E.2d 22, 28 n.6 (2018) (recognizing that in *Alden v. Maine*, "the Supreme Court noted that the adoption of the Fourteenth Amendment 'required the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution, so that Congress may authorize private suits against nonconsenting States pursuant to its § 5 enforcement power.' " (quoting *Alden*, 527 U.S. at 756)).  The burden of demonstrating a waiver of sovereign immunity rests with the plaintiff.  *Bd. of Regents of Univ. Sys. of Ga. v. Winter*, 331 Ga. App. 528, 535, 771 S.E.2d 201, 207 (2015), *overruled on other grounds by Rivera v. Washington*, 298 Ga. 770, 778 n.7, 784 S.E.2d 775, 781 n.7 (2016);

*Dep't of Transp. v. Dupree*, 256 Ga. App. 668, 671, 570 S.E.2d 1, 5 (2002); *Bd. of Regents of Univ. Sys. of Ga. v. Daniels*, 264 Ga. 328, 329, 446 S.E.2d 735, 736 (1994).

Binding precedent holds that Congress's attempt to abrogate sovereign immunity from ADEA claims was not a valid exercise of its authority under § 5 of the Fourteenth Amendment and thus that private individuals may not sue a state under the ADEA without the state's consent. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 78 (2000). Thus, there is no basis for a determination that Congress has abrogated state sovereign immunity pursuant to its Fourteenth Amendment enforcement powers to redress discriminatory state action.

Plaintiff has also failed to assert facts indicating that TCSG waived immunity by accepting a federal grant, nor has she proffered authority indicating that acceptance of grant money operates as a waiver as a matter of law. While Plaintiff has generally alleged that she was the Dean of Adult Education, [Doc. 1-1 ¶ 6], that she had "significant experience with the federal grant process," [*id.* ¶ 7], that the adult education program was funded primarily through federal grant money, [*id.* ¶ 8], she did not set forth in the complaint any facts indicating that the GPTC grant program required compliance with all federal nondiscrimination law as a condition for receiving federal assistance. [*See generally* Doc. 1-1; Doc. 10]. The

14

Court is not required to accept as true a legal conclusion couched as a factual assertion.  *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) ("In ruling on a motion to dismiss, we have instructed, courts " 'must take all of the factual allegations in the complaint as true,' but 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " (quoting *Iqbal*, 556 U.S. at 678)).  And while Plaintiff's brief cites *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) and *Autery v. United States*, 992 F.2d 1523 (11th Cir. 1993) for the general proposition that the federal government may condition federal grants on a state's waiver of sovereign immunity to federal claims, [Doc. 10 at 8], the citations are not helpful:  the citations are to dicta, and in any case, the opinions recite only the unremarkable principle that Congress may condition its grant of funds to the states upon their taking certain actions Congress could not require them to take.  *See College Savings Bank*, 527 U.S. at 686; *Autery*, 992 F.2d at 1527 n.7.  Indeed, the Court's research indicates that sovereign immunity is only waived by the receipt of federal funds if the state entity is clearly and unequivocally notified that receipt of the funds works as a waiver of immunity.  *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 287-88 (2011); *Keeler v. Fla. Dep't of Health, Div. of Disability Determinations*, 397 Fed. Appx. 579, 582-83 (11th Cir. Sept. 24, 2010) ("[M]ere receipt of federal funds is insufficient to show that a state has waived its

sovereign immunity." (quotation marks omitted)).  Absent any allegation that the federal grants at issue clearly indicated that acceptance of funds worked as a waiver of immunity, the undersigned finds no sovereign-immunity waiver resulting from Defendants' receipt of federal grant funds.

Plaintiff's argument regarding statutory waiver of sovereign immunity gives the Court pause, however.  Plaintiff points out that in *Williamson v. Department of Human Resources*, a panel of the Court of Appeals of Georgia held that the state of Georgia waived its immunity from suit for violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 et seq., because the state had enacted the Fair Employment Practices Act ("FEPA"), which provides a right of action against the state for those discriminated against in public employment based on age, race, color, gender, or disability, O.C.G.A. §§ 45-19-21(a)(3); 45-19-36(b).  [Doc. 10 at 7 (citing *Williamson*, 258 Ga. App. 113, 116, 572 S.E.2d 678, 681-82 (2002))].  The court reasoned in the *Williamson* opinion that it would offend the Supremacy Clause of the U.S. Constitution for the state of Georgia, via the FEPA, to "discriminate against federally based rights" by waiving its sovereign immunity as to state disability discrimination claims by its employees while "selectively cloak[ing] itself in sovereign immunity as to federal disability discrimination claims by its employees." *Williamson*, 258 Ga. App. at 116

16

& nn. 6, 7, 572 S.E.2d at 681 & nn. 6, 7 (cited in [Doc. 10 at 7-8 & n.3]).  Plaintiff argues that under *Williamson*, because the FEPA also proscribes discrimination based on age, the state likewise implicitly waived its immunity from suit under the ADEA.  [Doc. 10 at 7].  She concedes that *Williamson* has never been affirmed by the Supreme Court of Georgia, but she points out that it also has not been overruled. (Tr. at 21:45-22:20, 26:45-27:39).

In response, Defendants do not contend that *Williamson*'s reasoning would not apply to also waive sovereign immunity to claims asserted against state entities under the ADEA.  [*See generally* Doc. 14].  Instead, Defendants argue that *Williamson* was wrongly decided and that the Court should instead follow federal precedent recognizing that a state can retain its sovereign immunity from federal claims even where those federal claims are similar to state causes of action for which immunity has been waived.  [*Id*. at 6-7 (citing *Kimel*, 528 at 91-92 (holding that while Congress did not validly abrogate the states' sovereign immunity to suits by private individuals under the ADEA, state employees could recover money damages under Florida age discrimination statutes); *Stroud*, 722 F.3d at 1299 n.2 (relying on *Kimel* for the principle that "[a] state does not waive immunity against a federal law by waiving immunity against a similar state law" in holding that Alabama had not implicitly consented to suit for federal ADEA claims when it

enacted a state age-discrimination statute that "specifically adopted all of the rights and remedies of the federal ADEA" (brackets omitted)))]. Defendants also criticize *Williamson*'s reliance on *Howlett v. Rose*, 496 U.S. 356, 380-81 (1990), *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 234 (1934), and *Collins v. Dep't of Transp.*, 208 Ga. App. 53, 56, 429 S.E.2d 707 (1993), to support its Supremacy Clause reasoning, since sovereign immunity was not at issue in *McKnett* or *Collins*, and the aspect of sovereign immunity that was at issue in *Howlett* was not whether waiver of sovereign immunity from certain state-law claims inherently caused waiver of sovereign immunity from similar federal claims but instead whether the state of Florida could extend sovereign immunity from § 1983 claims to subordinate government entities that would not otherwise have enjoyed that immunity in federal court. [Doc. 14 at 7-9 & n.5 (*comparing Williamson*, 258 Ga. App. at 116 & nn. 6-7, 572 S.E.2d at 681 & nn. 6-7, *with Howlett*, 496 U.S. 358-59, and *McKnett*, 292 U.S. at 233-34, and *generally with Collins*, 208 Ga. App. 53, 429 S.E.2d 707)]. Defendants also criticize the *Williamson* opinion's reliance on *Alden v. Maine*, 527 U.S. at 754-55, to support its Supremacy Clause rationale, pointing out that *Williamson* incorrectly represented that the *Alden* opinion held that the state had not waived sovereign immunity to claims asserted under a certain federal law because it had not waived immunity to claims

asserted under a comparable state law, [Doc. 14 at 7-8 n.4 (*comparing Williamson*, 258 Ga. App. at 116 n.6, 572 S.E.2d at 681 n.6 *with Alden*, 527 U.S. at 754-55)], and that in the *Alden* opinion, the U.S. Supreme Court explained "[w]hen a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States," [Doc. 14 at 9-10 (*comparing Williamson*, 258 Ga. App. at 116 n.6, 572 S.E.2d at 681 n.6, *with Alden*, 527 U.S. at 731-32)]. At oral argument, Defendants also pointed out that no published opinion has followed *Williamson*'s holding that in enacting the FEPA, the Georgia legislature inherently waived sovereign immunity to corresponding federal claims, and that several other courts have expressly declined to follow *Williamson* itself or the reasoning upon which *Williamson* relied.  (Tr. at 12:00-14:59 (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) (finding that Texas had not waived sovereign immunity from suits under the ADA by enacting state disability protections because the Texas Labor Code did not contain a "clear and unequivocal waiver of immunity from suit with respect to the ADA"); *Acevedo Lopez v. Police Dep't of the Commonwealth of P.R.*, 247 F.3d 26, 28-29 (1st Cir. 2001) (finding that Puerto Rico had not waived sovereign immunity from suits under the ADA by enacting Law 44 of Puerto Rico because it contained "no

specific language indicating that Puerto Rico intend[ed] to make itself subject to damages suits in federal court for disability-based employment discrimination"); *Blauer v. Dep't of Workforce Servs.*, 2014 UT App 100, ¶ 10, 331 P.3d 1, 5 (2014) ("Contrary to the Georgia Court of Appeals' conclusion, we do not consider Utah's creation of an administrative remedy for disability discrimination in employment to constitute a clear and unequivocal waiver of its immunity from ADA suit either in state or in federal court.")).

The Court shares Defendants' doubt that *Williamson* was correctly decided, given its questionable Supremacy Clause analysis and the provision in the Constitution of the State of Georgia stating that "sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly *which specifically provides that sovereign immunity is thereby waived and the extent of such waiver*." Ga. Const. art. 1, § 2, ¶ IX(e) (emphasis added). Plaintiff has not pointed to any portion of the FEPA that specifically provides for sovereign immunity waiver, and the Court has found none. It bears noting, however, that the *Williamson* court considered the paragraph IX argument and nevertheless found waiver, *Williamson*, 258 Ga. App. at 115, 572 S.E.2d at 681; that the Supreme Court of Georgia denied certiorari of the case, *Williamson, id.* at 113, 572 S.E.2d at 678 (stating that certiorari was denied on Feb. 10, 2003);

and that the case has stood for eighteen years without having been overruled. Adding further doubt to the issue, the Court's own research has also revealed that some federal district courts in Georgia have followed *Williamson*'s sovereign-immunity holding and others have not. *Compare*, *e.g., Ferst v. Norton*, Civ. Action No. 7:07-cv-78(HL), 2009 WL 927945, at *3 (M.D. Ga. Mar. 30, 2009) (finding, in spite of *Williamson*'s holding, that Georgia's enaction of the FEPA did not expressly or impliedly waive its immunity to ADEA suits); *Jackson v. Oconee Cmty. Serv. Bd.*, No. 5:06-CV-55 (WDO), 2006 WL 1652236, at *2-4 (M.D. Ga. June 8, 2006) (declining to follow *Williamson* on grounds that "[w]aivers of sovereign immunity are not implied"), *with Jones v. Ga. Dep't of Corrs.*, Civ. Action No. 1:07-CV-1228-RLV, 2008 WL 779326, at *4-5 (N.D. Ga. Mar. 18, 2008) (holding, based on *Williamson*, that sovereign immunity did not bar the plaintiff's employee's removed ADA claims).

Georgia law authorizes certification of state-law questions that are "determinative of [a] case" pending in federal district court when there are "no clear controlling precedents" in the decisions of the Supreme Court of Georgia. O.C.G.A. § 15-2-9(a). The Eleventh Circuit has indicated that "[s]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." *Cascade Crossing II, LLC*

21

*v. Radioshack Corp*., 480 F.3d 1228, 1231 (11th Cir. 2007) (per curiam) (quotation marks omitted) (certifying a question concerning the application of O.C.G.A. § 13-1-11).   In determining whether to certify a question, courts also consider factors such as comity and practical limitations, including the possibility of framing the issue so as to produce a helpful response on the part of the state court.   *State of Fla. ex rel. Shevin v. Exxon Corp*., 526 F.2d 266, 274-75 (5th Cir. 1976)[4]; *see also Royal Cap. Dev., LLC v. Md. Cas. Co*., 659 F.3d 1050, 1055 (11th Cir. 2011) ("While this circuit traditionally has been less reluctant than others to certify questions of state law, it nonetheless has been our practice to do so with restraint and only after the consideration of a number of factors," the most important being "the closeness of the question and the existence of sufficient sources of state law . . . to allow a principled rather than conjectural conclusion.") (footnote, internal quotation marks, and punctuation omitted).

Given the lack of clear precedent of the Supreme Court of Georgia, the apparent contradiction between the text of the Georgia Constitution pertaining to

---

[4]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

sovereign-immunity waiver and the *Williamson* holding, and some Georgia federal courts' reticence to follow *Williamson*, the undersigned finds that there is substantial question about whether, in enacting the FEPA, the state of Georgia inherently waived sovereign immunity to claims asserted under the ADEA. The question is narrow and easily framed. The Court's decision on the certified question will determine the outcome of Defendants' motion to dismiss the ADEA claims. And considerations of comity are especially pressing here, as the issue raises the weighty questions of the state's sovereignty and legal liability under multiple federal civil rights causes of action. For all of these reasons, the undersigned concludes that certification of this question is warranted.

Accordingly, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendants' motion to dismiss the ADEA claims **WITHOUT PREJUDICE**, **CERTIFY** the question to the Supreme Court of Georgia (that is, whether, in enacting the FEPA, the state of Georgia inherently waived sovereign immunity to claims asserted under the ADEA), and **GRANT** leave to Defendants to file a renewed motion to dismiss within twenty-one days of the entry of the

response to the certified question on this Court's docket, should they believe that

the response provides grounds upon which a renewed motion should be granted.[5]

### D.   Section 1981 Claims Asserted via § 1983

Defendants move for dismissal of the § 1981 claims asserted via § 1983 on

grounds of Eleventh Amendment immunity.  [Doc. 4 at 13-14].  Specifically, they

---

[5]        Should the District Judge disagree with the recommendation to certify the question of whether the state of Georgia has waived its sovereign immunity to employment-discrimination claims asserted under the ADEA, the undersigned **ALTERNATIVELY RECOMMENDS** that the Court find, based on *Williamson*, that the state waived its immunity.  "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise."  *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983); *accord Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018) ("State law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law even if we think that decision is wrong.").  Such a "court is bound by this rule whether or not the court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates."  *Silverberg, id.*; *accord Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290 (11th Cir. 2012) (recognizing the practice of giving "ordinary deference" to state courts when they interpret matters of state concern and declining to interpret state law in a way that is diametrically opposed to the findings of the state appeals court).  While the undersigned sincerely doubts that *Williamson* was correctly decided, those doubts do not amount to a "persuasive indication" that the Supreme Court of Georgia will overturn *Williamson*, given that court's denial of certiorari and the fact that *Williamson* has stood for over eighteen years without having been overruled.  The Court also finds that it would be particularly inappropriate for it, as a federal court, to second-guess a state court's determination regarding sovereign-immunity waiver.

argue that § 1983[6] is a valid congressional override of Eleventh Amendment immunity only to the extent that it proscribes certain actions by a "person" that violate the rights of others and that because a suit against a state official in his or her official capacity is not a suit against the official but instead is a suit against the official's office and thus no different from a suit against the state itself, Defendants therefore are not "persons" within the meaning of § 1983, and the § 1981 claims asserted via § 1983 are all barred by Eleventh Amendment immunity. [*Id.*].

Plaintiff, in response, does not argue that Congress overrode Eleventh Amendment immunity in enacting § 1983 or that any of the defendants should be considered "persons" under § 1983.[7] Instead, she contends that her claims for reinstatement against Mr. Dozier and Mr. Holston are viable under the *Ex Parte Young* doctrine: she points out that Defendants' own authority recognizes that state

_____

[6]     Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State," causes any person within the jurisdiction of the United States to be deprived "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

[7]     Indeed, Congress did not override states' immunity in enacting § 1983, *Stevens*, 864 F.2d at 115 n.4, and "[n]either a state nor state officials acting in their official capacities are 'persons' within the meaning of § 1983," *Wells*, 510 Fed. Appx. at 895.

officials sued in their official capacity are subject to suit under § 1983 for prospective injunctive relief, [Doc. 10 at 11 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989))], and contends that requests for reinstatement of employment constitute such prospective injunctive relief, [*id.* at 10 (citing *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (per curiam))].

In reply, Defendants argue that Plaintiff is seeking redress of discrete violations occurring in the past—her termination and the failure to hire her for the Dean of Adult Education position—rather than relief to end continuing violations of federal law, and reinstatement therefore is not available under the *Ex parte Young* exception. [Doc. 14 at 3-5 (citing *Ingram v. Buford City Sch. Dist.*, Civ. Action File No. 1:18-CV-03103-ELR-WEJ, 2018 WL 7079179, at *6 (N.D. Ga. Dec. 17, 2018) (Johnson, M.J.), *adopted at* Civ. Action File No. 1:18-CV-03103-ELR-WEJ, ECF no. 91 (Apr. 9. 2019) (Ross, J.); *Pears v. Mobile Cnty.*, 645 F. Supp. 2d 1062, 1078 n.22 (S.D. Ala. 2009); *Fesseha v. Bd. of Regents/Univ. Sys. of Ga.*, Civ. Action No. 1:06-CV-1734-ODE-JFK, 2007 WL 9702357, at *9-11 & n.4 (N.D. Ga. Dec. 17, 2007) (R&R), *adopted at* 2008 WL 11407411 (Mar. 11, 2008) (Evans, J.))].

Here, Plaintiff has the better end of the argument.  In the *Lane* opinion, which is binding on this Court, the court plainly states that "requests for reinstatement [of employment] constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment." *Lane*, 772 F.3d at 1351; *accord Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995); *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993), *vacated on other grounds*, 28 F.3d 1146 (11th Cir. 1994).  In contrast, the cases upon which Defendants rely are all district court cases, the majority of them unpublished, and therefore are at most of only persuasive authority.  *See Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1258 n.10 (11th Cir. 2001) ("We note that generally district court decisions are only persuasive authority and have no binding precedential authority beyond the case in which they are entered.").  Nor are those cases persuasive here, as only *Ingram* post-dates *Lane*; while *Ingram* opinion at least acknowledged the plaintiff's citation to *Lane*, it did not explain why *Lane* did not control its reinstatement determination, *see Ingram*, 2018 WL 7079179 at *5-6; and neither *Pears* nor *Fesseha* acknowledged Eleventh Circuit authority holding that claims for reinstatement fell within the *Ex parte Young* exception, much less explained why that authority would not be binding, *see Pears*, 645 F. Supp. 2d at 1078 n.22;

27

*Fesseha*, 2007 WL 9702357 at *9 & n.4.  Additionally, the pleadings indicate that Mr. Dozier and Mr. Holston, in their official capacities, as commissioner of the TCGS and president of GPTC, respectively, would be capable of enacting the injunctive relief Plaintiff seeks.  [*Compare* Doc. 1-1 ¶¶ 4-5 (alleging Mr. Dozier's and Mr. Holston's official positions) *with* ¶ 6 (alleging that the former president of GPTC had hired Plaintiff)].

For these reasons, the undersigned concludes, pursuant to *Lane*, that Eleventh Amendment sovereign immunity bars all of the relief Plaintiff requests under § 1981, except for her claim for reinstatement.  It is therefore **RECOMMENDED** that the District Judge **GRANT** the motion to dismiss the § 1981 claims except for the claim for reinstatement.

### E.    Due-Process and Equal-Protection Claims

As discussed above, Plaintiff does not contest Defendants' motion to dismiss the claims asserted under the due-process and equal-protection provisions of the Georgia constitution on grounds that they are also barred by sovereign immunity. [Doc. 10 at 4]; *see supra* Part A.  She argues, however, that the complaint sets out factual allegations sufficient to support due-process and equal-protection claims under the Fourteenth Amendment via § 1983, and she requests leave to amend the complaint accordingly.  [*Id*. at 4-5, 11-14].

Defendants argue that leave to amend should be denied on grounds that amendment would be futile in light of Defendants' Eleventh Amendment immunity to § 1983 claims and Plaintiff's failure to allege a continuing violation sufficient to invoke the *Ex Parte Young* doctrine. [Doc. 14 at 10-11].

A plaintiff who seeks to amend a complaint later than twenty-one days after a defendant files a motion to dismiss the original complaint may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A court "should freely give leave when justice so requires." *Id*. The Supreme Court has said that the "freely given" standard means:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing prior version of Rule 15). Rule 15 "contemplates that leave shall be granted unless there is a substantial reason to deny it." *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985); *see also Shipner v. Eastern Air Lines*, 868 F.2d 401, 407 (11th Cir. 1989) (noting that while a court has discretion to deny

29

a proposed amendment, it must provide a substantial reason for such a denial, because "Rule 15(a) severely restricts the district court's freedom" and further noting that policy embodied in the Federal Rules of Civil Procedure favors liberally permitting amendments).

As discussed in the section immediately above, while Defendants' Eleventh Amendment sovereign-immunity objections are largely well-taken, the subset of claims for reinstatement would not be barred. *See supra* Part D. Defendants have raised no other apparent reason to deny leave to amend the complaint as to that subset of claims, and the Court also finds none. Additionally, while the Court typically requires a separate motion for leave to amend, here, the claims are already set forth in the complaint, and granting the request requires only that the pleadings be amended to restate the causes of action asserted in Counts III and IV in terms of their federal counterparts. *See Ambles v. State*, 259 Ga. 406, 407, 383 S.E.2d 555, 557 (1989) ("The protection of the Georgia Constitution of 1983, art. I, sec. I, para. II, and the Equal Protection Clause of the federal constitution have been held to be coextensive."); *compare* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law.") *with* Ga. Const. art. I., § 1, ¶ I ("No person shall be deprived of life, liberty, or property except by due process of law.").

30

Accordingly, the undersigned **RECOMMENDS** that Defendants' request to amend the complaint to reallege their due-process and equal-protection claims pursuant to the Fourteenth Amendment of the United States Constitution via § 1983 be **GRANTED** so far as Plaintiff asserts claims against Mr. Dozier and Mr. Holston for reinstatement of her employment.

## IV.  PROCEEDINGS PENDING ANSWER TO CERTIFIED QUESTION

Assuming the District Judge's adoption in full of the undersigned's recommendations, the question remains whether discovery should proceed pending the Supreme Court of Georgia's response to the certified question.  While it is true that discovery of the ADEA claims may not add much of a burden beyond that inherent in discovery of the Title VII claims or the claims for reinstatement asserted via § 1983, the federal courts have a general policy against piecemeal litigation. This policy favors staying the proceedings pending the Supreme Court of Georgia's answering of the certified question.  The undersigned therefore recommends that this action be administratively closed pending an answer to the certified question, and that it automatically be reopened ten days following the entry of the response to the certified question on the Court's docket.

31

## V.    **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss as to the abandoned claims enumerated in Part III.A. above; **DISMISS or DROP** Georgia Piedmont Technical College from the lawsuit; **DENY WITHOUT PREJUDICE** the motion to dismiss the ADEA claims; **CERTIFY** to the Supreme Court of Georgia the question of whether Georgia has waived sovereign immunity to claims asserted under the ADEA by enacting the FEPA; **GRANT** the motion to dismiss as to the claims asserted under § 1981 via § 1983, except for the claims for reinstatement; and **GRANT** Plaintiff leave to restate her due-process and equal-protection claims under the Fourteenth Amendment via § 1983, so far as she seeks reinstatement. Should the District Judge adopt this R&R in full, the only claims remaining will be the ADEA claims; the Title VII claims asserted against TCSG; and the claims for reinstatement asserted against Mr. Dozier and Mr. Holston via § 1983.  The undersigned further **RECOMMENDS** that this action be administratively closed pending the Supreme Court of Georgia's answer to the certified question; that the action automatically be reopened ten days after the response to the certified question is entered onto the Court's docket; that Plaintiff be allowed fourteen days after the response to the certified question is entered onto the Court's docket to file

an amended complaint restating her Georgia due-process and equal-protection claims for reinstatement under the Fourteenth Amendment via 42 U.S.C. § 1983; and that Defendants be allowed twenty-one days after the response to the certified question is entered onto the Court's docket to file a renewed motion to dismiss the ADEA claims.

**IT IS SO RECOMMENDED**, this 22nd day of January, 2021.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

33